**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

INTEGRATED MANAGEMENT
SYSTEMS, INC.,

    Plaintiff,

v.

MAHESH BASAVEGOWDA,

    Defendant.

Case No.

Hon.

## **COMPLAINT**

Plaintiff Integrated Management Systems, Inc. ("Plaintiff" or "IMSI"), by and through its counsel, Dykema Gossett PLLC, for its Complaint against Defendant Mahesh Basavegowda ("Defendant"), states as follows:

### **THE PARTIES, JURISDICTION AND VENUE**

1. Plaintiff is a corporation incorporated under the laws of the State of Michigan and with its principal place of business in Ann Arbor, Michigan.

2. Defendant is an individual who resides in the state of Pennsylvania at 300 Elizabeth Drive, Pittsburgh, Pennsylvania.

3. Plaintiff does business in Michigan and throughout the United States.

4. The Court has federal diversity jurisdiction over this action pursuant to 28 U.S.C. §1332, as the parties are citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

5. Personal jurisdiction and venue in this Court are proper under the terms of the agreement between the parties.

**GENERAL ALLEGATIONS**

6. This is an action for breach of contract, in which Plaintiff seeks damages and other relief from Defendant that may be appropriate.

7. Plaintiff is a professional services and staffing firm that hired technically trained information technology workers ("workers") and provides those workers to third-party business clients ("end-clients"). Although workers are on the end-client's premises, the workers are paid employees of Plaintiff. Some of Plaintiff's employees are foreign workers in the United States on H-1B visas.

8. In serving as an intermediary in the market between workers and end-clients, Plaintiff competes with other staffing agencies and faces the risk of disintermediation, *i.e.*, the end-client contracting directly with the worker without Plaintiff acting as the intermediary.

9. On or around March 1, 2016, Plaintiff sponsored Defendant for an H-1B visa and expended thousands of dollars to bring Defendant into the United States, including recruitment costs, visa filing fees, lawyer fees, administrative

costs, and local agency fees. In 2013, Plaintiff filed a Green Card petition for Defendant, which was approved in 2017 and enabled Defendant to obtain permanent immigrant status in the United States.

10. Plaintiff expended significant effort and time in hiring, seeking and obtaining a skilled job for Defendant, which is a requirement in order to sponsor Defendant for the filing of the H-1B and Green Card applications. The successful efforts of the Plaintiff resulted in Defendant being able to come work in the United States and being placed with end-client SAP-Ariba, a software and information technology services company.

11. On April 26, 2017, Defendant signed an Employment Agreement with Plaintiff. A true copy of the Employment Agreement is attached to this Complaint as Exhibit 1.

12. Under the Employment Agreement, Defendant hired Plaintiff as a Programmer/Analyst at a salary of $131,810 annually, and provided him with medical and life insurances.

13. In the "Non-Compete/Termination" provision of the Employment Agreement, Defendant agreed "not to enter into any employment agreement directly with IMSI's End-client or through any other contract company who provides similar services for a minimum period of 24 months after start of employment with IMSI for an end-client." *See* Exhibit 1. Defendant agreed that

3

should he "resign or terminate employment with [Plaintiff] prior to the 24 month minimum period, in consideration of the benefits the Employee is deriving, the Employee shall pay a lump-sum amount of liquidated damages equal to two years of gross margin based on IMSI project billing rate to cover for loss of business." *Id*.

14. Defendant agreed that the terms of the Employment Agreement were "reasonable and necessary . . . in order to protect [Plaintiff's] legitimate business interests as an intermediary, and as consideration for [Plaintiff's] significant investment of time and expense in the [Plaintiff's] Immigration and Visa assistance." *Id*.

15. Further, Plaintiff's liquidated damages provision is permitted under 20 C.F.R. 655.731(c)(10)(i)(B), which states "[t]he employer is permitted to receive bona fide liquidated damages from the H-1B nonimmigrant who ceases employment with the employer prior to the agreed date."

16. Plaintiff's liquidated damages provision in the Employment Agreement was directly proportionate to the damages that Plaintiff would suffer (and will now suffer) due to Defendant breaching his contract because the liquidated damages provision seeks only the amount of money that Plaintiff will suffer from a loss of profits earned from placing Defendant with the end-client.

4

17. Notwithstanding these obligations, on or around October 27, 2017, Defendant resigned his employment with Plaintiff and accepted direct employment with end-client SAP Ariba, after only approximately six months of employment with Plaintiff.

18. Upon information and belief, end-client SAP Ariba filed for a transfer of Plaintiff's H-1B Visa to SAP Ariba months before Defendant's October 27, 2017 resignation.

## COUNT I
## BREACH OF CONTRACT

19. Plaintiff realleges the previous allegations as if fully set forth herein.

20. The Employment Agreement is valid and binding on all parties to it.

21. Plaintiff performed all of its obligations under the Employment Agreement.

22. Defendant violated the terms of the Employment Agreement by, within 24 months of the start of his employment, resigning and accepting employment with end-client SAP Ariba within twenty-four (24) months after the start of his employment, which is a violation of Defendant's contractual obligations to Plaintiff and triggers a liquidated damages provision.

23. On October 23, 2017, Plaintiff demanded that Defendant cease and desist from any conduct that would violate Defendant's contractual obligations. Defendant refused to do so. As a result, Defendant has breached his contractual

5

obligations to Defendant and triggered the liquidated damages provision of the Employment Agreement that allows Plaintiff to recover "two years of gross margin based on IMSI project billing rate to cover for loss of business." *Id*.

24. The liquidated damages provision in the Employment Agreement is for an amount that is fixed and stipulated by the parties at the inception of the contract, and is a reasonable estimate of the anticipated damage caused to Defendant by Plaintiff's breach of the contract pursuant to 20 C.F.R. § 655.731(c)(10)(i)(C).

25. Defendant's start date with Plaintiff was April 19, 2017. By resigning on or around October 27, 2017 and violating the Employment Agreement by going to work for the end-client, SAP Ariba, Defendant will cause monetary damages to Plaintiff of approximately 18 months (24 months minus 6 months of employment) of "gross margin based on [Plaintiff's] project billing rate." *Id*.

26. Specifically, Plaintiff's "gross margin" attributable to Defendant's employment is approximately $27.15 per hour. Therefore, the total gross margin for the 18 months remaining under the bona fide liquidated damages provision in the Employment Agreement is approximately $80,635.50.

27. In addition, Plaintiff is entitled to its "costs and expenses, including actual attorney fees," if it "prevails in a legal action from the Employee's breach." *Id*.

6

WHEREFORE, based on the foregoing, Plaintiff respectfully requests that this Court enter judgment in its favor against Defendant for (a) monetary damages for breach of the Employment Agreement in the amount of $80,635.50; (b) reasonable attorneys' fees and costs in this matter pursuant to the Employment Agreement; and (c) such other and further relief as this Court deems just and equitable.

Respectfully submitted,

DYKEMA GOSSETT PLLC

By: /s/ Noah S. Hurwitz
Noah S. Hurwitz (P74063)
Robert A. Boonin (P38172)
Attorneys for Plaintiff
Dykema Gossett PLLC
2723 S. State St., Ste. 400
Ann Arbor, MI 48103
(734) 214-7617
nhurwitz@dykema.com
November 20, 2017    rboonin@dykema.com