# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

INTEGRATED MANAGEMENT SYSTEMS, INC.,

        Plaintiff,        CASE NO. 17-13764
                                  HON. DENISE PAGE HOOD

v.

MAHESH BASAVEGOWDA,

        Defendant.

_____/

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [#10]

### I. BACKGROUND

On November 20, 2017, Plaintiff Integrated Management Systems, Inc. ("IMSI") filed a Complaint against Defendant Mahesh Basavegowda ("Basavegowda") alleging that Basavegowda breached the terms of his Employment Agreement. (Doc # 1) On October 3, 2018, IMSI filed a Motion for Summary Judgment. (Doc # 10) Basavegowda filed his Response on October 24, 2018. (Doc # 12) IMSI filed its Reply on November 7, 2018. (Doc # 13) Basavegowda filed a Sur-Reply on November 21, 2018. (Doc # 16)

IMSI is a professional services and staffing firm that hires technically trained information technology workers and provides those workers to third-party business clients ("end-clients"). (Doc # 1, Pg ID 2) The workers perform their job duties on

1

the end-clients' premises, but are paid employees of IMSI. (*Id.*) Since IMSI serves as an intermediary between the workers and the end-clients, IMSI competes with other staffing agencies and faces the risk of disintermediation. (*Id.*) IMSI describes "disintermediation" as when end-clients can contract directly with workers without an intermediary. (*Id.*)

Some of IMSI's employees are foreign workers in the United States on H-1B visas. (*Id.*) On or around March 1, 2016, IMSI sponsored Basavegowda for an H-1B visa and expended thousands of dollars to bring him to the United States. (*Id.* at 2-3.) The costs included: recruitment costs, visa filing fees, lawyer fees, administrative costs, and local agency fees. (*Id.* at 3.) IMSI also assisted Basavegowda with his green card petition in 2013. (*Id.*) Basavegowda's petition was approved in 2017, which enabled him to obtain permanent immigrant status in the United States. (*Id.*) In order for Basavegowda to receive his H-1B visa and green card, he was required to obtain a skilled job. (*Id.*) Due to the efforts of IMSI, Basavegowda fulfilled these requirements by obtaining employment with one of IMSI's end-clients, SAP-Ariba, a software and information technology services company. (*Id.*)

On April 26, 2017, Basavegowda signed an Employment Agreement with IMSI. (*Id.*) Under the terms of the Agreement, IMSI hired Basavegowda as a Programmer/Analyst at a salary of $131,810 annually, and provided him with

medical and life insurances. (*Id.*) In the "Non-Compete/Termination" provision of the Agreement, Basavegowda consented to "not to enter into any employment agreement directly with IMSI's [end-client] or through any other contract company who provides similar services for a minimum period of 24 months after [the] start of employment with IMSI for an end-client." (Doc # 1-1, Pg ID 8) Basavegowda also agreed that should he "resign or terminate employment with [IMSI] prior to the 24 month minimum period, in consideration of the benefits that [he] is deriving, [he] shall pay a lump-sum amount of liquidated damages equal to two years of gross margin based on IMSI project billing rate to cover for loss of business." (*Id.*) IMSI alleges that the Agreement's liquidated damages provision was directly proportionate to the damages that IMSI would suffer because the provision only seeks the amount of money that IMSI would suffer from a loss of profits earned from placing Basavegowda with SAP-Ariba. (Doc # 1, Pg ID 4)

On or around October 27, 2017, Basavegowda resigned his employment with IMSI and accepted direct employment with SAP-Ariba after only approximately six months of employment with IMSI. (*Id.* at 5.) IMSI claims SAP-Ariba filed for a transfer of Basavegowda's H-1B Visa to SAP-Ariba months before Basavegowda resigned from IMSI. (*Id.*) It is now alleged by IMSI that Basavegowda breached his Agreement by accepting employment with SAP-Ariba within 24 months after the start of his employment with IMSI. (*Id.*)

3

IMSI seeks monetary damages for breach of the Employment Agreement in the amount of $112,944,[1] reasonable attorneys' fees and costs, and any further relief that this Court deems just and equitable. (Doc # 10, Pg ID 62)

## II. ANALYSIS

### A. Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedures provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the court must view admissible evidence in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment must be

---

[1] IMSI originally requested $80,635.50 in damages in its Complaint. (Doc # 1, Pg ID 7)

4

entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322-23. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248.

### B. Breach of Contract Claim

IMSI argues that Basavegowda's alleged breach of the Agreement is actionable because the Agreement's non-compete provision is neither unconscionable nor excessive. Specifically, IMSI asserts that the non-compete provision is valid since it: (1) furthers a legitimate business interest; and (2) has a reasonable scope. *See* M.C.L. § 445.774a. First, IMSI claims that its reasonable competitive business interest is preventing disintermediation. According to IMSI, while the Sixth Circuit has yet to set any precedent on the topic, federal appellate courts and various state courts have held that disintermediation is a reasonable competitive business interest. *See Consultants & Designers v. Butler Serv. Grp.*, 720 F.2d 1553, 1558-59 (11th Cir. 1983).

Second, regarding the scope of the non-compete provision, IMSI argues that its provision is lawful pursuant to M.C.L. § 445.774a, which states that non-compete

agreements are valid if they are reasonable as to their duration, geographic area, and the type of employment or line of business. IMSI contends that the non-compete provision's two-year duration is a temporal scope which Michigan courts have consistently upheld as reasonable. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 549 (6th Cir. 2007) IMSI argues that the non-compete provision's geographic scope is permissible since the non-compete clause has no limiting geographic scope, which meant that Basavegowda was free to work anywhere in the United States. IMSI contends that the non-compete provision does not improperly limit the type of employment or line of business that Basavegowda could enter after leaving IMSI because he was only prevented from seeking employment with SAP-Ariba or through any other contract company who provides similar services.

IMSI additionally claims that it is entitled to liquidated damages for Basavegowda's alleged breach of the Agreement. IMSI asserts that the Agreement's liquidated damages provision is reasonable because it was costly to bring Basavegowda to the United States. IMSI further contends that its request for liquidated damages is justified to remedy the fact that the staffing agency lost potential profits due to Basavegowda's alleged breach of the Agreement. Regarding the amount, IMSI claims that Basavegowda's gross margin that is attributable to IMSI's employment, is approximately $27.15 per hour, which equals two years of

gross margin based on IMSI's project billing rate to cover for loss of business. The total amount of liquidated damages that IMSI seeks is $112,944.[2]

In response, Basavegowda argues that the non-compete provision was invalid pursuant to Michigan law. First, Basavegowda contends that courts have only recognized confidential information, goodwill, or trade secrets as reasonable competitive business interests under Michigan law, and he argues that these interests are not present here. (Doc # 12, Pg ID 213-214) Basavegowda claims that the cases that IMSI cites to in order to demonstrate that federal courts have held that disintermediation is a reasonable competitive business interest are distinguishable from the instant case. Basavegowda alleges that IMSI relies on two federal cases, but in one case,[3] the two parties were staffing firms, and in the other,[4] the employee was privy to a substantial amount of confidential information. Basavegowda argues that these facts are dissimilar from the facts here. Further, Basavegowda asserts that in *Teachout Sec. Servs., Inc. v. Thomas,* No. 293009, 2010 WL 4104685, at *4 (Mich. Ct. App. Oct. 19, 2010), the Michigan Court of Appeals straightforwardly

---

[2] According to IMSI, Basavegowda agreed to pay IMSI an hourly rate of $63.3710/hour, for a total annual salary of $131, 810. (Doc # 10-25, Pg ID 164) IMSI also alleges that "[d]ividing those two numbers equals 2080 total working hours per year. Two years of working hours is 4160. Multiplying that total number of hours by Plaintiff's $27.15 hourly margin yields total lost margins of $112,944." (Doc # 10, Pg ID 62)
[3] *Consultants & Designers,* 720 F.2d at 1553 (11th Cir. 1983).
[4] *HR Staffing Consultants LLC v. Butts,* 627 Fed. Appx. 168 (3d Cir. 2015).

7

held that "no Michigan court has cited 'disintermediation' as a reasonable competitive business interest for limiting competition of former employees."

Second, Basavegowda claims that the non-compete provision is unenforceable because its duration, geographic area, and the type of employment or line of business stipulations are unreasonable. *St. Clair Med., P.C. v Borgiel*, 270 Mich. App. 260, 266 (2006). Basavegowda contends that the non-compete provision's duration is unreasonable because in most of the cases cited by IMSI, the acceptable non-compete periods were less than two years. Basavegowda also argues that the geographic area and type of employment or line of business conditions of the non-compete provision are unreasonable considering that pursuant to 8 U.S.C § 1184(n)(1), H-1B employees can only accept new employment upon the approval of the United States Citizenship and Immigration Services ("USCIS").

Basavegowda responds to IMSI's liquidated damages request by arguing that its request violates federal and Michigan law. Basavegowda claims that under federal law, employers cannot require H-1B employees to pay a penalty for ceasing employment with his or her employer prior to a date agreed upon between the employer and employee. *See* 8 U.S.C. §1182(n)(2)(C)(vi)(I). Basavegowda then accurately argues that 8 U.S.C. §1182(n)(2)(C)(vi)(I) requires the Court to determine whether a required payment is considered a penalty pursuant to relevant State law.

Basavegowda claims that under Michigan law, the difference between liquidated damages and non-allowable penalties is determined by examining whether requests are *reasonable* in relation to the possible injury suffered. *Curran v. Williams*, 352 Mich. 278, 282 (1958). Basavegowda argues that the liquidated damages provision at issue here is unreasonable because the conditions existing between both parties at the time the contract was made, which he contends is the proper way to evaluate these types of provisions, were one-sided and in favor of IMSI. According to Basavegowda, these conditions include: (1) IMSI illegally requiring/permitting Basavegowda to pay visa fees (i.e. filing, processing, attorney, etc.); (2) inadequate consideration; (3) no negotiations or validation of the terms between the parties; (4) the vast inequality of bargaining power between the parties; (5) an inconspicuous and arbitrary liquidated damages clause; (6) IMSI failing to suggest or recommend that Basavegowda consult with an attorney before signing the Agreement; (7) IMSI seeking to enforce a penalty as opposed to liquidated damages in violation of federal and Michigan law; and (8) IMSI being aware of the significant amount of hardship liquidated damages imposing two years of gross profit margin would cause Basavegowda. (Doc # 12, Pg ID 222)

Basavegowda next argues that since under Michigan law, the distinction between a valid liquidated damages clause and an illegal penalty depends on the relationship between the amount stipulated to in the liquidated damages clause and

9

the subject matter of the action, the liquidated damages provision should be considered unreasonable based on accepted customs. (*Id.* at 222-223.) Basavegowda claims that disintermediation is customarily addressed through a conversion or placement fee clause in the staffing services agreement between the agency and client—not between the agency and the employee. Consequently, Basavegowda argues that based on custom considerations, IMSI should be seeking liquidated damages from SAP-Ariba. Additionally, Basavegowda contends that because fees paid to the staffing firm in these instances are typically waived after six months, Basavegowda should not be responsible for paying liquidated damages.

To state a claim for breach of contract in Michigan, a plaintiff must allege: (1) the existence of a valid contract, (2) the terms of the contract, (3) breach of the contract, and (4) an injury caused by the breach. *See Webster v. Edward D. Jones & Co., L.P.*, 197 F.3d 815, 819 (6th Cir. 1999).

Non-compete agreements are specifically authorized under Michigan law if they: (a) protect the employer's reasonable competitive business interests, and (b) are reasonable in duration, geographical scope, and type of employment or line of business. *St. Clair Med., P.C.*, 270 Mich. App. at 266. These agreements are generally "disfavored as restraints of commerce and are only enforceable to the extent they are reasonable." *Teachout Security Services*, 2010 WL 4104685, at *1 (quoting *Coates v. Bastian Brothers, Inc.*, 276 Mich.App. 498, 507 (2007)). "The

burden of demonstrating the validity of the agreement is on the party seeking enforcement." *Coates v. Bastian Bros., Inc.*, 276 Mich.App 498, 507 (2007).

"To be reasonable in relation to an employer's competitive business interest, a restrictive covenant must protect against the employee's gaining some unfair advantage in competition with the employer, but not prohibit the employee from using general knowledge or skill." *St. Clair Med.,* 270 Mich.App. at 266. The employer's reasonable competitive business interests include "preventing the anticompetitive use of confidential information." *Rooyakker & Sitz, PLLC v. Plante & Moran*, 276 Mich.App. 146, 158 (2007) (quotation marks omitted). Reasonable competitive business interests also include protecting "close contact with the employer's customers or customer lists, or cost factors and pricing." *Certified Restoration Dry Cleaning Network, L.L.C.*, 511 F.3d at 547 (quotation marks omitted).

The Court finds that here, there is a genuine dispute as to whether disintermediation is considered a reasonable competitive business interest. IMSI relies on various nonbinding cases to support its argument that its Agreement with Basavegowda was designed to protect its legitimate and reasonable competitive business interest in preventing a customer and employee from "cutting out the 'middleman' " and dealing directly with each other. *Consultants & Designers,* 720 F.2d at 1558-1559; *Borg-Warner Protective Servs. Corp. v. Guardsmark, Inc.*, 946

F. Supp. 495, 502 (E.D. Ky. 1996); *Columbus Med. Servs., LLC v. David Thomas & Liberty Healthcare Corp.*, 308 S.W.3d 368, 389 (Tenn. Ct. App. 2009). However, the Sixth Circuit has not addressed this issue, and at least one Michigan court has found that disintermediation is not a reasonable competitive business interest. *See Teachout Security Services*, 2010 WL 4104685, at *1.

While there is a genuine issue of material fact as to the first prong, protecting the employer's reasonable competitive business interests, the Court will still address the arguments raised by both parties as to the second prong of the non-compete analysis. Regarding duration, as mentioned, IMSI asserts that two years is a reasonable amount of time for the Agreement to be in effect. The Court agrees. Courts have found that time periods ranging from six months to three years are reasonable, and this Court finds that the Agreement's two-year period is not excessive. *Lowry Computer Products v. Head,* 984 F.Supp. 1111, 1116 (E.D.Mich.1997).

Next, the Court finds that the Agreement's geographic limitation is reasonable. Geographic limitations in non-competition agreements must be tailored so that the scope of the agreement is no greater than is reasonably necessary to protect the employer's legitimate business interests. *Superior Consulting Co. v. Walling,* 851 F.Supp. 839, 847 (E.D.Mich.1994). Here, the Agreement does not have a limiting geographic scope. As IMSI points out, following Basavegowda's

departure, he had the ability to work anywhere in the United States. Basavegowda argues that because he was an H-1B employee, his job search process was limited because he could only accept new employment upon the approval of the USCIS. Though Basavegowda's claim might be true, it does not change the fact that the *Agreement* did not limit where he could work. Therefore, the Agreement's geographic scope was reasonable.

The Agreement was also reasonable as to line of work. Courts have held that a limitation on working in any capacity for a competitor of a former employer is too broad to be enforceable. *Superior Consulting Co.,* 851 F.Supp. at 847; *see also Telxon Corp. v. Hoffman,* 720 F.Supp. 657 (N.D.Ill.1989). Here, the Court finds that the Agreement only narrowly restricted the type of employment or line of business that Basavegowda could enter considering that he was only barred from seeking employment "with [IMSI's] end-client or through any other contract company who provides similar services." (Doc # 1-1, Pg ID 8)

The Court does not find it appropriate to address whether IMSI is entitled to liquidated damages at this stage in the litigation because the Court has not found that Basavegowda breached the terms of the Agreement.

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **DENIED**.

### III. CONCLUSION

For the reasons set forth above,

IT IS HEREBY ORDERED that Plaintiff Integrated Management Systems, Inc.'s Motion for Summary Judgment (Doc # 10) is **DENIED**.

s/Denise Page Hood  
DENISE PAGE HOOD  
Chief Judge

Dated:     August 16, 2019